# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                         )

RICHARD JONES,              )
                         )
         Plaintiff,      )
                         )
         v.            )     Civil Action No. 12-CV-1236(KBJ)
                         )
CHARLES HAGEL, Secretary   )
U.S. Department of Defense,[1]   )
                         )
         Defendant.    )
                         )
_____ )

## MEMORANDUM OPINION

Plaintiff Richard Jones brings this suit to challenge actions taken by his former employers, the Department of the Army ("Army") and the Department of Defense ("DOD").  Plaintiff filed a two-count complaint on July 26, 2012, alleging reprisal in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* (Count I), and termination not promoting the efficiency of the federal service in violation of the Civil Service Reform Act, 5 U.S.C. § 7513 (Count II).  (*See* Complaint ("Compl."), ECF No. 1.)  The DOD is the sole named defendant in this case.  Before the Court is Defendant's motion to dismiss on the grounds of improper venue, or, in the alternative, to transfer this action to the Eastern District of Virginia, pursuant to Fed. R. Civ. P. 12(b)(3).  (*See* Def.'s Mot. to Dismiss, or in the Alternative to Transfer, for Improper Venue ("Def.'s Mot."), ECF No. 14.)  Upon consideration of the motion, the Plaintiff's opposition (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"),

---

[1] Plaintiff filed this action against Leon Panetta in his capacity as Secretary of Defense.  Charles Hagel is substituted as defendant pursuant to Fed. R. Civ. P. 25(d).

ECF No. 15), the Defendant's reply thereto (Def.'s Reply in Supp. of its Mot. to Dismiss ("Def.'s Reply"), ECF No. 16), and the relevant facts, Defendant's motion is hereby **DENIED**.

## I.     FACTUAL BACKGROUND

Plaintiff began work as a security guard at Walter Reed Army Medical Center ("WRAMC") in Washington, D.C., in 2005.  (Compl. ¶ 21.)   While employed at WRAMC, Plaintiff was an employee of the Army.  (Aff. of Neville Carson in Supp. of Def.'s Mot. ("Carson Aff."), ECF No. 14-1, ¶ 2.)   In 2010, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint alleging race, color, and perceived disability discrimination and hostile work environment against his supervisors, Edwin Sepulveda and Andrew Holtz.  (Compl. ¶¶ 22-23.)   Shortly after Plaintiff filed that complaint, Sepulveda, acting on behalf of the Army, issued a Notice of Unacceptable Performance alleging problems with Plaintiff's work performance and indicating that Plaintiff's "failure to improve his performance may result in other administrative actions, such as removal." (*Id.* ¶ 24.)   The Army issued this notice from WRAMC in Washington, D.C.  (*See id.*)

Plaintiff received the Notice of Unacceptable Performance on May 14, 2010. (*Id.* ¶ 24.)   The following year, during the summer of 2011, Plaintiff twice took and failed a required Physical Agility Test ("PAT") in Washington, D.C.[2]   (*Id.* ¶ 25.) Thereafter, Sepulveda issued Plaintiff a Memorandum of Counseling citing Plaintiff for various problematic conduct, including failing the PAT.  (*Id.* ¶ 26.)   The Army issued this memo from WRAMC in Washington, D.C.  (*See id.*)   Several weeks later,

---

[2] As a security officer, plaintiff was required to take the PAT, which involved running a mile and a half in 17 minutes and 30 seconds or less.  (Def.'s Mot. at 2.)   Plaintiff alleges that he ran the required distance in 17 minutes and 45 seconds.  (Compl. ¶ 25.)

Sepulveda issued Plaintiff a Notice of Proposed Removal on the basis that he had "[f]ail[ed] to meet a condition of Employment" by failing the PAT. (*Id.* ¶ 27.) The Army issued this notice from WRAMC in Washington, D.C., as well. (Ex. C to Def.'s Mot., ECF No. 14-2, at 1.) Sepulveda also issued, from WRAMC in Washington, D.C., a Special Evaluation Report that detailed grievances with Plaintiff's work performance. (Compl. ¶ 35.)

In August 2011, pursuant to a process called Base Realignment and Closure ("BRAC"), WRAMC closed its doors and all WRAMC employees were transferred to one of two DOD facilities "at the same position, grade, and pay." (Carson Aff. ¶ 5.) On August 17, 2011, Plaintiff was officially transferred from WRAMC, the Army hospital in Washington, D.C., to Fort Belvoir, a DOD facility in Virginia. (Pl.'s Opp'n at 2.) Despite that official transfer, Plaintiff remained at WRAMC, in Washington, D.C., until August 28, 2011. (Aff. of Richard Jones in Supp. of Pl.'s Opp'n ("Jones Aff."), ECF No. 15-3, ¶ 3.)

Plaintiff began working at Fort Belvoir in Virginia on September 12, 2011. (*Id.* ¶ 5.) Three days later, on September 15, 2011, Plaintiff's second-level supervisor, Holtz, who also had been transferred from WRAMC to Fort Belvoir as part of BRAC, issued a Notice of Decision of Proposed Removal in regard to Plaintiff on behalf of the DOD. (Ex. E to Def.'s Mot. at 2.) This notice was issued in Virginia. (*Id.* at 1.) The decision became effective—*i.e.*, ended Plaintiff's employment and required him to leave Fort Belvoir—the very next day, September 16, 2011. (*Id.*) Plaintiff worked in Virginia for a total of four days. (Jones Aff. ¶ 7; Pl.'s Opp'n at 6.)

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(3) the court shall dismiss or transfer a case if venue is improper. FED. R. CIV. P. 12(b)(3). "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor[,]" *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (quoting *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276-77 (D.D.C. 2002)), but need not accept the plaintiff's legal conclusions as true. *Darby*, 231 F. Supp. 2d at 277 (citing *2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001)). "The court may consider materials outside of the pleadings" without converting the motion to dismiss into a motion for summary judgment. *Bullock v. Wash. Metro. Area Transit Auth.*, No. 12-0985(ABJ), 2013 WL 1859293, at *2 (D.D.C. May 6. 2013) (citing *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002)). To prevail on a motion to dismiss for improper venue, the defendant must present facts that will defeat the plaintiff's assertion of venue. *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). However, "[b]ecause it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff . . . bears the burden of establishing that venue is proper." *Id.* at 55 (citation omitted).

## III.  ANALYSIS

Defendant argues that venue is improper in the U.S. District Court for the District of Columbia and that, as a result, this case should be dismissed or transferred to

the Eastern District of Virginia, where venue is proper.  (Def.'s Mot. at 1.)  Plaintiff appears to concede that venue is proper in the Eastern District of Virginia, but counters that venue is also proper in the District of Columbia.  (*See* Pl.'s Opp'n at 1, 7.)

In Title VII cases, venue is governed by statute, and a plaintiff may bring suit in any one of three judicial districts:  (1) where "the unlawful employment practice is alleged to have been committed"; (2) where "the employment records relevant to such practice are maintained and administered"; or (3) where "the aggrieved person would have worked but for the alleged unlawful employment practice[.]"  42 U.S.C. § 2000e-5(f)(3).  If the defendant is not found in any of those districts, a plaintiff may also bring suit (4) "within the judicial district in which the respondent has his principal office."  *Id.*  A plaintiff need only satisfy one of these four bases of jurisdiction for venue to be proper in his chosen forum.  *Pendleton*, 552 F. Supp. 2d at 18.

If the district in which the action is brought does not meet the requirements of Title VII's venue provision, then the court may either dismiss the case "or[,] if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Even if venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  "The decision whether dismissal or transfer is 'in the interests of justice' is committed to the sound discretion of the district court." *Pendleton*, 552 F. Supp. 2d at 17 (citing *Naartex Consulting Corp. v. Watt*, 772 F. 2d 779, 789 (D.C. Cir. 1983)).  "Generally, the 'interest of justice' requires courts to

transfer cases to the appropriate judicial district, rather than dismiss them." *Darby*, 231 F. Supp. 2d at 277 (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)).

In this case, Plaintiff contends that venue is proper in the U.S. district court in Washington, D.C., under the first statutory basis for venue because "all of the unlawful retaliatory practices occurred within the District [of Columbia]." (Pl.'s Opp'n. at 4.) This statutory prong is the only one on which Plaintiff can rely. Based on facts that the Defendant alleges and Plaintiff concedes, venue is proper under the second statutory prong in Virginia and Illinois, where Plaintiff's employment records are located. (Def.'s Mot. at 5.) Venue is proper under the third statutory prong only in the Eastern District of Virginia, because Plaintiff would have worked at Fort Belvoir but for his removal. (*Id.* at 4-5.) The fourth statutory prong is not applicable in this case because Defendant can "be found" in the Eastern District of Virginia. (*Id.* at 5.)[3] Therefore, the only question before the Court is whether the alleged "unlawful employment practice" occurred in D.C., such that venue is proper in the federal district court in D.C. under the first prong of 42 U.S.C. § 2000e-5(f)(3).

This first statutory basis for venue in Title VII cases "focuses on the locus of the alleged discrimination." *James v. Booz-Allen*, 227 F. Supp. 2d 16, 22 (D.D.C. 2002). "[T]he Court must look to the place where the *decisions* and *actions* concerning the employment practices occurred." *Hayes v. RCA Serv. Co.*, 546 F. Supp. 661, 663 (D.D.C. 1982) (emphasis added). "Courts can determine venue by applying a

---

[3] Notably, even if the last statutory basis for venue did apply here, the DOD's principal office (the Pentagon) is located in Arlington, Virginia, for venue purposes despite its Washington, D.C., mailing address, which means that venue under the fourth statutory basis is proper in the Eastern District of Virginia, not D.C. *See Saran v. Harvey*, No. 04-1847(JDB), 2005 WL 1106347, at *4 (D.D.C. May 9, 2005) ("the Secretary of the Army's principal office is at the Pentagon in Arlington, Virginia" for purposes of venue); *Donnell v. Nat'l Guard Bureau*, 568 F. Supp. 93, 94-95 (D.D.C. 1983) (notwithstanding a D.C. mailing address the National Guard Bureau is located at the Pentagon in Virginia for purposes of venue).

'commonsense appraisal' of events having operative significance." *James*, 227 F. Supp. 2d at 20 (quoting *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978)). "Specifically, venue cannot lie in the District of Columbia when 'a substantial part, if not all, of the employment practices challenged in this action' took place outside the District even when actions taken in the District 'may have had an impact on the plaintiff's situation.'" *Id.* (quoting *Donnell v. Nat'l Guard Bureau*, 568 F. Supp. 93, 94 (D.D.C. 1983)).

The converse is also true. For example, in *Miller v. Insulation Contractors*, 608 F. Supp. 2d 97 (D.D.C. 2009), the plaintiff worked as a contractor on projects in Virginia, Washington, D.C., and Maryland during his time of employment. For a period of three years, the plaintiff largely worked in D.C., where his supervisor allegedly made racist comments towards him and threatened to fire him. *Id.* at 100-01. The plaintiff then worked for several weeks in Maryland, where he was laid off based on input from that same supervisor. *Id.* The plaintiff filed a lawsuit in D.C., and the defendant filed a motion to transfer the case to the District of Maryland.[4] The court found that "[t]he material events . . . involved more than just the demotion and the firing [which happened in Maryland]; they also involved the years of discriminatory harassment[,]" the majority of which the plaintiff alleged had occurred in D.C. *Id.* at 102-03. The Court noted that while plaintiff and his supervisor both resided in Maryland and defendant's only office was in Maryland—making venue proper in Maryland under at least one of the statutory bases—that "[did] not destroy deference shown to [the plaintiff's] choice of forum." *Id.* at 103. The court found venue proper in D.C. and

---

[4] The plaintiff initially filed his complaint in the Superior Court of the District of Columbia, but the defendants removed the action to the District Court for the District of Columbia. *Miller v. Insulation Contractors*, 608 F. Supp. 2d 97, 101 (D.D.C. 2009).

declined to transfer the case under 28 U.S.C. § 1404(a) for convenience or the interest of justice. *Id.* at 104.

As *Miller* makes clear, the "unlawful employment practice" in a wrongful termination case includes the "material events" related to the underlying claims of discrimination that contributed to the ultimate firing decision. *See id.* at 102. *Miller* also clarifies that the location of the final termination decision is not the sole or exclusive determinant of proper venue. *Id.* Other cases in this district have followed this same approach. *See Slaby v. Holder*, 901 F. Supp. 2d 129, 134-35 (D.D.C. 2012) (finding venue in D.C. improper where the only action that occurred in D.C. was the final termination decision); *Middlebrooks v. England*, No. 05CV0556JDB, 2005 WL 3213956, at *2-3 (D.D.C. Nov. 2, 2005) (finding venue in D.C. improper because only the authorization for final termination happened in D.C., while a substantial portion of the alleged discriminatory events took place in Maryland); *see also Hunter v. Johanns*, 517 F. Supp. 2d 340, 344 (D.D.C. 2007) (finding venue proper in D.C., where review of the plaintiff's records and final suspension took place, and also in Maryland, where the plaintiff worked and where the events surrounding the alleged claims of discrimination took place).

The facts of this case mirror those in *Miller*. Plaintiff alleges that the "unlawful employment practice" at issue here began with a series of unwarranted formal written reprimands from his supervisor, which issued from WRAMC in D.C. (Pl.'s Opp'n at 5-6.) Plaintiff took and failed the PAT in D.C., and the Notice of Proposed Removal, seemingly a step in the final termination process, also issued from WRAMC in D.C. (*Id.*) Indeed, there is no dispute that every one of the alleged discriminatory and

retaliatory events that gave rise to this lawsuit occurred in D.C., save Plaintiff's final termination.  And it cannot be seriously maintained that the final termination arose from decisions and actions that occurred in Virginia because Plaintiff only worked in Virginia for four days before he was terminated (Pl.'s Opp'n at 1), and the final termination notice merely incorporated the findings of the earlier proposed removal notice, which detailed events that all occurred at WRAMC in D.C.  (Ex. E to Def.'s Mot. at 1 (finding termination was "warranted given the evidence, details of which were provided in the [Notice of Proposed Removal and Special Evaluation Report]); Ex. C to Def.'s Mot. at 1-2.)

The *Miller* court found venue proper in D.C. despite the fact that the final termination decision happened in Maryland, and this Court finds no reason to disagree with that result.  *See id.* at 104.  Weighing the "balance of allegedly discriminatory events, including plaintiff's actual termination and every instance of alleged workplace discrimination," *Middlebrooks*, 2005 WL 3213956, at *3, this Court is persuaded that venue is proper in D.C. under the first prong of 42 U.S.C. § 2000e-5(f)(3).  *See Middlebrooks*, 2005 WL 3213956, at *3; *see also Miller*, 608 F. Supp. 2d at 103; *Hunter*, 517 F. Supp. 2d at 344.

As a follow-on to its primary argument, Defendant asserts that venue is improper in D.C. because Plaintiff has only sued the DOD—not the Army—and the DOD's actions with respect to Plaintiff took place only in Virginia.  (Def.'s Reply at 4. ("[T]he [final] termination . . . is the only adverse action that the Department of Defense allegedly took against [Plaintiff.]").)  This argument, which depends upon Defendant's

contention that "[t]here is nothing that connects Plaintiff's employment with the Department of Defense to Washington, D.C." (*id.*), is both formalistic and wrong.

To the contrary, there is a clear and inescapable connection between the Army, the DOD, and Plaintiff such that it is entirely reasonable to attribute the allegedly retaliatory actions of the Army (which, as noted above, took place primarily in D.C.) to the DOD for the purpose of the venue analysis.  First of all, the Army is a department *within* the DOD, even though the two entities are generally sued separately.  Moreover, the particular Army unit where Plaintiff once worked and where most of the allegedly illegal events took place (WRAMC) was completely dissolved and essentially folded into DOD as part of BRAC.  All WRAMC employees were transferred from the Army to the DOD (Carson Aff. ¶ 5), and many went from being employed in D.C. to being employed in Virginia, including Plaintiff and his supervisors, such as Holtz.  This total transfer of employee assets from the WRAMC to the DOD makes DOD akin to a successor-in-interest to the Army as far as the Army's allegedly retaliatory actions toward its former employees are concerned, and in that regard, DOD is responsible for the Army's former, allegedly illegal actions, wherever they occurred.  *Cf. Holland v. Williams Mountain Coal Co.*, 256 F.3d 819, 824 (D.C. Cir. 2001) (finding a successor corporation liable for its predecessor's legal claims under certain circumstances, including if the transaction amounts to a *de facto* merger, or the buying corporation is a "mere continuation" of the selling corporation); *Reese Bros., Inc. v. U.S. Postal Serv.*, 477 F. Supp. 2d 31, 40-41 (D.D.C. 2007) (same).

What is more, the record in this case reveals that there is a direct relationship between the DOD and the allegedly retaliatory events which took place in D.C. and

about which Plaintiff complains.   It was none other than Holtz, a former Army employee and one of Plaintiff's supervisors at WRAMC in D.C. (Compl. ¶ 22), who issued the final termination notice on the DOD's behalf.  (*Id.* ¶ 36.)  In addition, as noted above, the DOD's final termination notice expressly references the Notice of Proposed Removal that the Army had issued from WRAMC in D.C., and explicitly states that the DOD decision makers took into account events that had taken place at WRAMC.  (Ex. E to Def.'s Mot. at 1.)  Having expressly adopted the Army's actions and findings regarding events that had occurred in D.C., DOD cannot now argue that it has no connection to them.

As a final matter, the Court must assess whether to transfer this case to the Eastern District of Virginia "[f]or the convenience of parties and witnesses, [and] in the interest of justice" under 28 U.S.C. § 1404(a).  The Court declines to do so.  "When two potentially proper venues are involved, the plaintiffs' choice of forum is often accorded substantial deference, particularly where the plaintiffs have chosen their home forum and many of the relevant events occurred there."  *Demery v. Montgomery Cnty., MD*, 602 F. Supp. 2d 206, 210 (D.D.C. 2009) (citing *Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 496 F. Supp. 2d 137, 144-45 (D.D.C. 2007)).  Given the deference owed to a plaintiff's chosen forum, as well as the fact that (a) the Plaintiff in the instant case resides in D.C. (Compl. ¶ 1), (b) all but one of the alleged discriminatory events occurred in D.C., and (c) Defendant does not suggest that D.C. is in any way an inconvenient forum for itself or its witnesses, it is in the interests of justice for the case to remain in this district.

## IV.    CONCLUSION

For the reasons stated above, venue is proper in the United States District Court for the District of Columbia, and convenience and justice do not favor transferring this case to the Eastern District of Virginia. Consequently, Defendant's Motion to Dismiss or Transfer is **DENIED**.  A separate order will follow.


Date:  July 30, 2013                                      *Ketanji Brown Jackson*
                                                          KETANJI BROWN JACKSON
                                                          United States District Judge